## COURTNEY v. RHODES.

(Supreme Court, Appellate Division, Second Department. January 26, 1912.)

BROKERS (§ 65*)—RIGHT TO COMMISSIONS—ESTOPPEL TO ASSERT CLAIM.

Plaintiff, a broker, empowered to sell land for defendant, showed it to M. & B., brokers of S., and afterwards to M. and S., and discussed with them the terms of sale. Soon afterwards defendant told plaintiff that two men had been at his place, who wanted an option for the land, told him one of them was B., and showed him the card of M. & B., which they had left. Plaintiff, either not knowing the names of the men to whom he showed the land, or being lacking in frankness, made no claim that the men who had been there were his parties, but disclaimed knowledge of them, and advised defendant to give them an option, which he did, and afterwards defendant made a contract of sale to S., whereby M. & B. were recognized as the brokers entitled to commissions. Held that, this having occurred through plaintiff's fault, he was not entitled to assert a right to commissions, though on the day the contract of sale was signed he presented himself and claimed the commissions, and defendant, in the presence of the conflicting claims, made him an offer of a certain amount, and in a later interview indicated that he thought plaintiff had earned the commissions, and that he was willing to do what was right.

[Ed. Note.—For other cases, see Brokers, Dec. Dig. § 65.*]

Hirschberg, J., dissenting.

Appeal from Nassau County Court.

Action by John J. Courtney against Charles D. Rhodes. From a judgment for plaintiff, and from an order denying a motion for new trial, defendant appeals. Reversed, and new trial ordered.

Argued before JENKS, P. J., and HIRSCHBERG, THOMAS, CARR, and RICH, JJ.

Clinton M. Flint, for appellant.
Lewis J. Smith, for respondent.

THOMAS, J. The plaintiff has recovered judgment for commissions for selling defendant's land. In June, 1909, he showed the prop-

erty to one Mitchell and another, and a few days later to Mitchell and Shields, and in each instance discussed terms of sale. On both occasions defendant was seen at work at a distance. He also saw the visitors. The night following the last visit defendant spoke of it to plaintiff, who indicated that the strangers were prospective purchasers. Two days later defendant said to plaintiff that "there had been a couple of gentlemen there who wanted an option." Plaintiff said: "By all means give them an option."

"He mentioned that it was a man named Beringer. I could not place any man by the name of Beringer. I could not get his name into my head. He said: 'Would you give him an option?' And I said: 'By all means give him an option.'"

Later he advised plaintiff that he had given the option. On August 13th, when a contract was made, plaintiff was present and demanded a commission. Thereupon Mitchell controverted his right to it, and in the end defendant offered plaintiff $200. On July 14, 1909, Rhodes had given Beringer, who was acting for Shields, an option for 30 days to purchase the land at $1,000 an acre, less 3 per cent. commission, upon terms stated. Shields made the contract on August 13th, and Beringer and Mitchell were recognized as the brokers entitled to commissions if the title passed. Later, in November, plaintiff and his attorney saw defendant, and to the former's inquiry, "What are you going to do about this matter?" said:

"I recognize you are entitled to a commission in this transaction, but until we see what they are going to do about closing this contract I cannot do anything, but I am perfectly satisfied you are the agent in this matter. * * * There would be no trouble between him and I, however the thing went. * * * After this thing is disposed of, I will come up and see you, and make some sort of an arrangement."

The plaintiff did not know the names of the men to whom he showed the land, and used no diligence to know. When the defendant showed him a card on which was printed "Mitchell & Beringer," the plaintiff disclaimed knowledge of them, and removed some thought on the part of the defendant that the men were plaintiff's customers. Without indicating that he had any relation to the men, plaintiff advised defendant to sell them the farm, and upon such information and advice defendant acted.

Upon the plaintiff's testimony, it appears that plaintiff, duly employed to sell the land, influenced Mitchell & Beringer, Shields' brokers, to look at it, and by this, and by later showing it to Mitchell and Shields, the purchaser, enabled them to go directly to the owner and obtain the option. But it is clear that Rhodes, before making the contract, had no knowledge sufficient to put him on his guard that Mitchell had done this, and that it was by his earlier intervention that the result was obtained, although he in the end believed it. Plaintiff concealed the names and identity of those with whom he was negotiating—indeed, he seems not to have known the names—and when defendant went to him to make inquiry whether they were his parties, as he had some thought that they might be, plaintiff made no claim that they were his parties, denied knowledge of them, and ad-

vised him to give the option. Thereupon defendant went forward and made engagements whereby he found himself bounden to other brokers. This, in my judgment, occurred entirely through the fault of plaintiff, who was lacking either in knowledge or frankness, or both. Thereby defendant was placed in hazard between two brokers.

If plaintiff intended to claim the fruits of the sale that should be made through the men who visited him, he should have so advised defendant, his employer, so that he would know that he was a participant in the negotiations, and thereby enabled defendant to keep clear of the entanglement that followed. It is true that on the day the contract was signed plaintiff did present himself and claim the commission, and the farmer, in the present of conflicting claims, made, as plaintiff says, an offer of $200, and later had conversation with him which indicated that he thought he had earned the commission, and that he was willing to do what was just under the circumstances. But the inclination of the farmer to be just, and an expression of his views, did not create the liability. Upon learning the history, defendant justly concluded that the plaintiff was the ultimate cause of the sale, and was willing to be fair to him. The plaintiff, by negligence or design, so kept his client in ignorance, and so advised him to give the option to other brokers, as to preclude plaintiff from now asserting that he should be recognized. It is another case where the landowner finds himself subject to demand by two brokers, and this situation the plaintiff brought about.

The judgment and order should be reversed, and a new trial ordered; costs to abide the event. All concur, except HIRSCHBERG, J., who dissents.